ELECTRONICALLY FILED
2020 Oct 02 AM 11:16
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001571-OT

Larry Fasbender

vs.

Prudential Insurance Company of America

**SUMMONS**

To the above-named Defendant/Respondent:

> **Prudential Insurance Company of America**
> **c/o Kansas Insurance Commissioner**
> **Attn: Legal Division, Kansas Insurance Department**
> **420 SW 9th Street**
> **Topeka, KS  66612**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Donald N Peterson, II
> 218 N Mosley
> Wichita, KS 67202

within 40 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 10/02/2020 03:19:44 PM

**Documents to be served with the Summons:**
PLE: Petition Petition

**EXHIBIT**
A

ELECTRONICALLY FILED
2020 Oct 02 AM 11:16
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001571-OT

## IN THE EIGHTEENTH JUDICAL DISTRICT COURT
## OF SEDGWICK COUNTY, KANSAS
## CIVIL DEPARMENT

| | |
|---|---|
| LARRY FASBENDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: |
| PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to K.S.A. Chapter 60

## PETITION

Plaintiff, Larry Fasbender, by and through his attorneys, Donald N. Peterson, II and Sean McGivern, of Graybill & Hazlewood LLC, for his cause of action against the Defendant, Prudential Insurance Company of America, states and alleges as follows:

1.      This is an action to recover benefits under an employee benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a(1)(B).

2.      Plaintiff Larry Fasbender is a citizen of the state of Kansas.

3.      Defendant Prudential Insurance Company of America ("Prudential") is a New Jersey insurance company with its registered office at 213 Washington St., 8th Floor, Newark, NJ 07102.

4.      Pursuant to K.S.A. 40-218, Prudential may be served with process through its statutory agent, the Kansas Insurance Commissioner, by serving Commissioner of Insurance, Attn: Legal Division, Kansas Insurance Department, 420 SW 9th Street, Topeka, Kansas 66612.

1

5.      Subject matter jurisdiction, personal jurisdiction, and venue are proper in this Court pursuant to ERISA §502(e)(1) and 29 U.S.C. § 1132(e)(1).

6.      Plaintiff has exhausted all administrative remedies prior to bringing suit.

7.      Plaintiff worked for Case New Holland for 21 years. His job was physically demanding, being classified as "heavy".

8.      On November 11, 2007, Plaintiff was injured while on the job.  He suffered a right lower leg crush injury resulting in two fractures of the right fibular shaft. He also suffered a probable posterior tibial nerve injury. He has cockup toes in his right foot secondary to the crush injury and probable distal tibial nerve injury.

9.      Plaintiff also has lumbago and disc herniation. He has had left shoulder lesion repair with residual pain upon attempted repetitive forward reach or overhead reach with the left arm.

10.     At all relevant times, Plaintiff has been insured under a Long-Term Disability ("LTD") insurance policy issued by Prudential, Policy No. 11482231-1-3.

11.     Defendant granted Plaintiff's application for long-term disability benefits effective May 4, 2008. Prudential paid the monthly benefits until October 31, 2015, when it denied benefits.

12.     That denial was unjustified. It was based on three things: (1) a surveillance report; (2) and examination by Dr. Chris Fevurly; and (3) a vocational assessment.

13.     Plaintiff appealed that denial. He emphasized that nothing about his condition has changed and although he can do some physical work for brief periods, as shown in the surveillance report, he can only do so for brief periods. Thus, Plaintiff emphasized, he does not have the capability of working eight hours per day, five days a week, which is the industry standard requirement. Defendant reversed its position and continued to pay benefits.

2

14.     After reinstating benefits, Defendant Prudential again immediately set out to find justification for another denial. It retained MES to locate a doctor for a medical examination, ultimately sending Plaintiff to Dr. Ng.  Defendant then sent Plaintiff to a functional capacity evaluation by Ashton Reichmann. Finally, Defendant obtained another internal vocational analysis.

15.     On March 12, 2019, Defendant again stopped paying benefits. Plaintiff appealed and obtained a final denial on November 21, 2019.

16.     Any objective review of the medical report, functional capacity review and vocational report raises obvious questions. Defendant appears not to have asked any of those questions. As an ERISA fiduciary, Defendant has an obligation to seek the truth and thus to ask providers hard questions about their determinations.

17.     Regarding MES, who referred Dr. NG to Defendant, Defendant either knows or should know that MES has an incentive to please Defendant by referring doctors who tend to testify contrary with disability claims. MES has a structural conflict of interest in that it provides services largely to the insurance industry. MES is very profitable. In 2011 it was purchased by ExamWorks, Inc. for $210,000,000.00. This kind of profitability requires repeat business by the insurance industry.  This financial relationship between the insurance industry and MES will cause MES to tend to select only the doctors disinclined to find disability in order to please its customer base, leading to a tendency to deny meritorious claims. A reasonably prudent fiduciary in Defendant's position would take great care to ensure that MES has robust systems in place to counteract this inherent conflict. Yet the files produced by Defendant fail to reflect any such systems.

3

18.     Dr. Ng's report itself raises questions. Defendant's letter to MES for the IME asked the physician to answer a number of questions. Question 13 noted that the treating doctor, Dr. Derksen, opines that Plaintiff is limited in a number of respects, including only part time work. The letter asked the IME doctor to indicate whether he agrees or not, and if not, to provide "a detailed explanation of why" he disagrees.  Dr. Ng indicated that he found Plaintiff's only limitation is pain, that he suffers from a "chronic pain syndrome" and that he believes it has not been sufficiently treated.

19.     Dr. Ng. provided absolutely no explanation or analysis to support these conclusions. He nowhere justifies his diagnosis. He fails to explain what treatment modalities he believes would help Plaintiff and why. Both Plaintiff's treating doctor (Dr. Derksen) and Defendant's prior IME doctor (Dr. Fevurly) are of the view that there is no further treatment helpful or necessary, that Plaintiff's condition is permanent and not treatable. Dr. Ng has provided absolutely nothing more than " say so" based on a brief visit to justify his "conclusion".

20.     Equally as important, Dr. Ng failed to fully answer Defendant's question because he failed to provide  "a detailed explanation." No reasonable fiduciary seeking the truth would accept this as a basis to deny benefits. At a minimum, the fiduciary would ask Dr. Ng hard questions about why he reached a conclusion contrary to the treating doctor.

21.     Dr. Ng ended up punting on the question of restrictions. He agrees that Plaintiff's pain is the result of his injuries. But as to what restrictions are appropriate, he deferred to an FCE. In effect, Dr. Ng provides no basis to reject Dr. Durksen's restrictions.

22.     The functional capacity examination is likewise problematic. Ashton Reichman performed the FCE on February 19, 2019. The FCE places Plaintiff in the "medium" category of

physical ability. It further concludes that he can do such work for 8 hours a day and 40 hours a week. The report is internally inconsistent. For example:

      a.   The report notes that "8/10 pain was reported with unilateral carrying on the L side and pushing."  (Report, p. 3)

      b.   The report notes that Plaintiff  "said his pain in the knee increased significantly from floor to waist lifting. He said his back also hurts." (Report, p.1)

      c.   The report notes that in "the Work Bent Over Standing/Stooping task, he said he stopped because of severe pain in his knees and ankle." (Report, p.1)

Yet, as support for the "medium" designation, the FCE finds that Plaintiff is able to "frequently" kneel, squat, walk and crawl. (Report, p.4)

23.     As with Dr. Ng, the FCE report provides absolutely no explanation for its conclusions. Given the Plaintiff's leg problems and his reports that he cannot work more than about 20 to 25 hours a week, which is supported by Dr. Durksen, one would expect some explanation for the conclusion that Plaintiff can work 8 hours a day for 40 hours each week.  Yet that is nowhere to be found in the report.

24.     Similarly, the report nowhere explains how its "medium" conclusion is consistent with Plaintiff being unable to complete the Work Bent Over Standing/Stooping Task because of pain. It likewise provides no explanation for how it is consistent with his reports of pain at the 8 out of 10 when carrying and pushing.

25.     A reasonable fiduciary trying to get at the truth would ask Ashton Reichman some hard questions to get to the bottom of the incompleteness and inconsistencies.  The file contains no indication that Defendant asked any such hard questions.

26.     The vocational review relied upon by Defendant, too, has obvious analytical problems.  This review identified the following jobs: (1) Farm Worker Supervisor; (2) Tractor Operator; (3) Bench Assembler; and (4) Final Inspector.

27.     Plaintiff cannot do the jobs identified in paragraph 26 on a full-time basis  That is why he was originally approved for disability and nothing has changed about his condition.

28.     Although Plaintiff works part-time on his farm, he gets substantial help from his family. Monitoring family members on a farm is entirely different from managing employees – both practically and legally.  Managing employees involves a skill set he does not have. It involves legal rules he has never been trained to work under.  There is no indication that Plaintiff has all the skills and knowledge necessary to be a professional Farm Worker Supervisor who would supervise employees working on a substantial farm operation (one big enough to hire a Farm Worker Supervisor).

29.     Any reasonable fiduciary seeking the truth would be asking hard questions on these issues and getting answers to those questions.  Yet Defendant's file reveals that nobody at Prudential has discussed any of these problems with the vocational reviewer. Further, nobody at Prudential has discussed any of these jobs with Plaintiff or otherwise identified reasons to believe he could do these jobs.

30.     Defendant's denial of LTD benefits was arbitrary, capricious, and not supported by substantial evidence.

31.     Plaintiff is entitled to disability benefits under the insurance policy. Further, Plaintiff seeks to enforce his rights to benefits under the policy, and to clarify his rights to future benefits under the policy.

32.     The Federal District Court for the District of Kansas has held that when disability benefits have been paid for a lengthy time period and the claimant's condition has not improved, the termination of benefits is a result of the administrator changing its mind and is not permitted. *Bryan Buss v. United of Omaha Life Insurance Company,* 2014 WL 4377683 (D. Kan. Sept. 24, 2014) (Chief Judge J. Thomas Marten) involved a claim for long term disability benefits. The benefits were paid from February 5, 2008 until July 16, 2012, when they were terminated. The court reversed the termination holding as follows:

> "United maintains that its decision denying Buss long-term disability benefits was reasonable because Buss failed to present satisfactory evidence that he was totally disabled. The court is unpersuaded by United's position. As the court explains below, United simply had no new evidence since its last review of Buss's claims that would justify its decision that Buss was disabled. After previously granting Buss long-term disability benefits on essentially the same information, ***United's reversal was arbitrary and capricious, as it had no new information showing an improvement in Buss's condition.***"

*Id,* at \*15 (emphasis added).

Identical reasoning applies here. Defendant does not have new evidence that Plaintiff's condition has improved. Defendant's denial does not even ***claim*** to have any such evidence.

WHEREFORE, Plaintiff Larry Fasbender prays this Court grant judgment in his favor, and against Defendant Prudential Insurance Company of America, and order that Prudential pay disability benefits, costs, and attorney fees, and award other relief that the Court deems is just and appropriate, pursuant to ERISA § 502(a)(1)(B) and (g).

Dated: October 2, 2020

SUBMITTED BY:

/s/ Donald Peterson
Donald N. Peterson, II, #13805

7

Sean M. McGivern, #22932
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley St.
Wichita, KS 67202
Telephone: (316) 266-4058
Fax: (316) 462-5566
sean@graybillhazlewood.com
*Attorney for Plaintiff*

8